ACCEPTED
02-15-00069-CV
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
3/2/2015 6:50:39 PM
DEBRA SPISAK
CLERK

## NO. 02-15-_____-CV

## THE STATE OF TEXAS

## COURT OF APPEALS

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS

03/02/2015 6:50:39 PM

DEBRA SPISAK
Clerk

## SECOND DISTRICT OF TEXAS AT FORT WORTH

---

### In Re PENTEX FOUNDATION and JOSHUA UNGER, TRUSTEE of GBU FRIENDS AND ASSOCIATES, TRUST, *Relators*

### v.

### THE YET TO BE DESIGNATED HONORABLE DISTRICT JUDGE OF TARRANT COUNTY, TEXAS, *Respondent*, and

### KENNTH VERN GIBBS and CANDACE GIBBS WALTON, *Real Parties in Interest*

---

## PETITION FOR WRIT OF MANDAMUS

---

Scott Smith

120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail: smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686

ATTORNEY FOR PENTEX FOUNDATION AND
JOSHUA UNGER, TRUSTEE OF GBU FRIENDS
AND ASSOCIATES TRUST, RELATORS

ORAL ARGUMENT REQUESTED

February 27, 2015

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUE PRESENTED

     Should mandamus be granted to enforce the parties' agreed,
     mandatory venue provisions of the contract, pursuant to Section
     15.020 of the Texas Civil Practices and Remedies Code? . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.    PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     VENUE IS MANDATORY WHERE THERE IS A WRITTEN
     CONTRACT WITH A STATED VALUE OF $5,000,000 AND AN
     EXPRESS AGREEMENT FOR VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . 7

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF COMPLIANCE
     WITH APPELATE RULE 52.3(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF COMPLIANCE
     WITH APPELATE RULE 9.4(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Cases**

*Airvantage, L.L.C. v. TBAN Properties # 1, L.T.D.,*
   269 S.W.3d 254, 257 (Tex. App.-Dallas 2008, no pet.) . . . . . . . . . . . . . . . . 12

*Carrothers Const. Co, L.L.C. v. City of S. Hutchinson,*
   288 Kan. 743, 207 P.3d 231 (Kan. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Flores v. Millennium Interests, Ltd.,* 185 S.W.3d 427 (Tex. 2005) . . . . . . . . . . . . . 9

*Gator Apple, LLC v. Apple Texas Restaurants, Inc.,*
   No. 05-12-01369-CV, 2014 Tex. App. LEXIS 2539
   (Tex. App. – Dallas, Mar. 5, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In Re Adan Volpe Properties, Ltd.,* 306 S.W.3d 369, 373
   (Tex. App – Corpus Christi 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*In re Applied Chem. Magnesias Corp.,* 206 S.W.3d 114, 117 (Tex. 2006) . . . . . . . 8

*In Re AutoNation,* 228 S.W.3d 663 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Cont'l Airlines, Inc.,* 988 S.W.2d 733, 735 (Tex. 1998) . . . . . . . . . . . . . . . . . . 8

*In re David Lopez, Sr.,* 372 S.W.3d 174, 176-77 (Tex. 2012) . . . . . . . . . . . . . . . . . . 8

*In Re: Fisher,* 433 S.W.3d 523 (Tex. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,10

*In Re: Kenneth Vern Gibbs, et al.,* No. 06-15-00002-CV,
   2015 Tex. App. LEXIS 906 (Tex. App. – Texarkana, Jan. 30, 2015) . . . . . . 5

*In Re Lisa Laser USA, Inc.,* 310 S.W.3d 880, 887 (Tex. 2010) . . . . . . . . . . . . . . . 10

*In Re: Pentex Foundation, et al.,* No. 06-15-00003-CV,
   2015 Tex. App. – LEXIS 889 (Tex. App. – Texarkana, Jan. 30, 2015) . . . . 5

*In Re Railroad Repair*, No. 05-09-0135-CV, 2009 Tex. App.
LEXIS 8404 (Tex. App. – Dallas, Nov. 2, 2009, no pet) . . . . . . . . . . . . . . . 12

*Kj Eastwood Invs. v. Enlow*, 923 S.W.2d 255, 258
(Tex. App. – Ft. Worth 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Maranatha Temple, Inc. v. Enter. Products Co., et. al.*,
833 S.W.2d 736 (Tex. App. – Hou. [1st Dist.] 1992, writ denied) . . . . . . . 11

*Spin Doctor Golf, Inc v. Paymentech, L.P.*, 296 S.W.3d 354
(Tex. App. – Dallas 2009, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Valence v. Dorsett Operating Co.*,164 S.W.3d 656, 664, 48 (Tex. 2005) . . . . . . . . 9

*Wichita County v. Hart*, 917 S.W.2d 779 (Tex.1996) . . . . . . . . . . . . . . . . . . . . . . . . 12

## Statutes and Rules

TEX. CIV. PRAC. & REM. CODE § 15.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

TEX. CIV. PRAC. & REM. CODE § 15.020 . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,4,9,12

TEX. CIV. PRAC. & REM. CODE § 15.0642 . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5,7,8

TEX. GOVT. CODE § 22.221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. R. CIV. P. 87 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATEMENT OF THE CASE

Pentex Foundation, Relator, brought suit in the 336th Judicial District Court of Fannin County, Texas, to enforce and declare the terms of a written contract, with a stated value in excess of $1,000,000, and an express venue provision for Fannin County, Texas. Kenneth Gibbs and Candace Walton, Respondents and Real Parties in Interest,[1] filed a motion to transfer venue to Tarrant County, Texas, for convenience. The presiding judge of the 336th District Court of Fannin County, Judge Laurine Blake, initially granted the motion to transfer venue, but subsequently reconsidered and denied the motion to transfer venue. At the time Judge Blake reconsidered her ruling on venue, the trial of the case was also set for June 1, 2015.

Gibbs and Walton filed a Petition for Writ of Mandamus with the Texarkana Court of Appeals, alleging that the trial court was without authority to reconsider and reverse its ruling on venue. Pentex filed a cross-petition, claiming that in any event venue was mandatory in Fannin County, Texas. The Texarkana Court of Appeals held that the trial court was without authority to reconsider the motion to transfer venue, and that the cross-petition by Pentex was therefore likewise without

---

[1] For convenience, they shall be referred to by their last names. Pentex Foundation shall be referred to as "Pentex."

jurisdiction.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this petition for writ of mandamus pursuant

to TEX. CIV. PRAC. & REM. CODE § 15.0642 and TEX. GOVT. CODE § 22.221(b);

See also, *Kj Eastwood Invs. v. Enlow*, 923 S.W.2d 255, 258 (Tex. App. – Ft. Worth

1996)("[W]e believe that the legislature, by recently enacting section 15.0642, has

obviated a relator's requirement to show that there is no adequate remedy by

appeal.")

## ISSUE PRESENTED

Should mandamus be granted to enforce the parties' agreed, mandatory
venue provisions of the contract, pursuant to Section 15.020 of the Texas Civil
Practices and Remedies Code?

## STATEMENT OF FACTS

### A.    PROCEDURAL BACKGROUND

Pentex filed its action to enforce and declare the terms of a written contract

on April 1, 2014, in Fannin County, Texas.[2]  Pentex asserted that venue was

mandatory in Fannin County, Texas, as the case arises from a contract involving a

---

[2]      The contract shall be referred to as "Contract". A copy of the Contract is attached
hereto as Appendix "A".  See also, Appendix "B" submitted herewith, at page 17.  The record is
submitted in the Appendix, and consists of two parts, "B" and "C", which are numbered
consecutively, and shall be referred to as "Appx."

major transaction, with venue specified and agreed by the parties to be in Fannin

County, Texas. TEX. CIV. PRAC. & REM. CODE § 15.020.[3]

Subsequently, Gibbs and Walton, filed another, similar lawsuit arising out of

the same facts and circumstances, which now involves all of the same parties, in

the statutory probate court of Tarrant County, Texas.[4]

In Fannin County, Gibbs and Walton filed a motion to transfer venue for

convenience[5], essentially asserting that "prejudice was so great" they could not get

a fair trial in Fannin County, Texas, because then counsel for Pentex was also a

---

[3] Section 15.020 of the Texas Civil Practices and Remedies Code applies to a "major transaction," which is defined as a transaction evidenced by a written agreement and which involves $1 million or more:

> (c) Notwithstanding any other provision of this title, an action arising from a major transaction may not be brought in a county if:
>
> > (1) the party bringing the action has agreed in writing that an action arising from the transaction may not be brought in that county, and the action may be brought in another county of this state or in another jurisdiction; or
> >
> > (2) the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction, and the action may be brought in that other county, under this section or otherwise, or in that other jurisdiction.

[4] A copy of this lawsuit is attached as Exhibit "B" to Relator's answer. Appx. 47. It was amended in December of 2014, so that it now includes all parties to the Fannin County lawsuit.

[5] Pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002.

part-time municipal judge for the City of Bonham. Texas.  Appx. 35.

The motion for change of venue filed by Gibbs and Walton was heard on September 30, 2014, and Judge Laurine Blake determined that venue should be transferred to Tarrant County.  Appx. 650.  Within five days, Pentex filed its Motion to Reconsider Motion to Transfer Venue.   Appx. 660.

The motion to reconsider was heard on November 12, 2014.  At that hearing, Judge Blake reconsidered the matter and determined that mandatory venue in fact existed in Fannin County, Texas.  Appx. 650.  At that time the court also entered a scheduling order setting the trial of this case for June 1, 2015. Appx. 747.

Two months later, Gibbs and Walton filed their Petition for Writ of Mandamus and Motion for Emergency Stay in the Texarkana Court of Appeals, claiming that Judge Blake was without authority to reconsider her ruling on venue. Pentex filed a cross-petition for mandamus relief, asserting that in the event the trial court did not have the authority to reconsider its ruling on venue, mandamus should have been granted to enforce the parties' agreed, mandatory venue provisions of the contract, pursuant to Section 15.020 of the Texas Civil Practices and Remedies Code.

The Texarkana Court of Appeals held that Judge Blake was without

jurisdiction to reconsider her order on venue,[6] and that the cross-petition should be denied as the "relief Pentex seeks by petition for writ of mandamus should be addressed to the Second Court of Appeals, the appellate court having jurisdiction over Tarrant County."[7]

As of the date of this Petition, the file has not physically arrived to Tarrant County, Texas. It is believed to be in transit.[8] Therefore, it has not been assigned to a particular Tarrant County district court. Nevertheless, the Tarrant County district courts presently have jurisdiction over this dispute. See, *In Re: Kenneth Vern Gibbs, et al.*, No. 06-15-00002-CV, 2015 Tex. App. LEXIS 906 (Tex. App. – Texarkana, Jan. 30, 2015)("The failure to transfer the physical file from Fannin County to Tarrant County affects neither the finality of the transfer order nor the transferring court's plenary jurisdiction.") Because of the previously set trial date, in order to be timely filed,[9] this petition claims relief with respect to a yet-to-be

---

[6] *In Re: Kenneth Vern Gibbs, et al.*, No. 06-15-00002-CV, 2015 Tex. App. LEXIS 906 (Tex. App. – Texarkana, Jan. 30, 2015), found at Appx. 848.

[7] *In Re: Pentex Foundation, et al.*, No. 06-15-00003-CV, 2015 Tex. App. – LEXIS 889 (Tex. App. – Texarkana, Jan. 30, 2015), found at Appx. 854.

[8] *See*, the index of proceedings received from the Fannin County District Clerk's Office on February 26, 2015. Appx. 857-58.

[9] Section 15.0642 provides specific statutory authority for the filing of a writ of mandamus to enforce mandatory venue provisions. It states that an application for writ of mandamus must be filed before the 90th day before the trial starts.

designated Tarrant County district judge.

## B.     FACTUAL BACKGROUND

This case concerns and arises out of the Contract entered into between and among Gibbs, Walton, Howard Kirk Gibbs and Albert Barcroft.[10] Pentex and Joshua Unger, Trustee are successors in interest to Mr. Barcroft. The Contract itself, at paragraph 4, stipulates a buyout and liquidated damages provision of $5,000,000, as follows:

> It is understood and agreed that Gibbs may cancel or nullify this contract only under the following conditions: a) If Gibbs pays over to Barcroft the sum of five million dollars ($5,000,000.00 US) in full, in addition to any money received prior to said one time payment, as liquidated damages and full settlement of all consideration on Gibbs part.

Contract ¶ 4 (emphasis original). The present dispute involves allegations that in excess of a million dollars were not distributed pursuant to the terms of the Contract. Paragraph 37 of the Plaintiff's Original Petition in this case alleges:

---

[10] A true and correct copy of that contract was attached to the Response to Motion to Transfer Venue, Plaintiff's Exhibit "A". Appx. 226-233. It's authenticity was not in dispute. Also attached to the Response was Plaintiff's Exhibit "B" is a copy of a portion of the Response to a Request for Admissions, by which the Contract is acknowledged in Response to Request for Admission number 1. Appx. 234, 236.

Plaintiff has had over a million dollars of money rightfully due Plaintiff taken by Ken, Candy and Howard to pay the attorney fees that were due to be paid only by Ken, Candy and Howard under written agreement, i.e. the Contract here.[11]

The prayer in the Plaintiff's Original Petition requests, "All actual damages; but, in any case, no less than one million dollars [$1,000,000.00]."

Importantly the Contract addressed venue in a very direct and forceful manner in paragraph 9:

Notwithstanding any other provisions of the law, it is expressly agreed that this contract shall be performable only in Fannin County, Texas; and, any dispute(s) will be resolved in the Courts of Fannin County, Texas.

(Emphasis original).

## ARGUMENT AND AUTHORITIES

### VENUE IS MANDATORY WHERE THERE IS A WRITTEN CONTRACT WITH A STATED VALUE OF $5,000,000 AND AN EXPRESS AGREEMENT FOR VENUE.

Pentex filed suit in Fannin County, for which mandatory venue was established. Mandamus relief is specifically authorized to enforce a statutory mandatory venue provision. *In Re: Fisher*, 433 S.W.3d 523, at 528-29 (Tex. 2014), citing TEX. CIV. PRAC. & REM. CODE § 15.0642. Moreover, mandamus relief is the proper remedy to enforce a mandatory venue provision when the trial

---

[11]     Appx. 12.

court has denied a motion to transfer venue. *In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 735 (Tex. 1998)(orig. proceeding); TEX. CIV. PRAC. & REM. CODE § 15.0642. Where a party seeks to enforce a mandatory venue provision a party is only required to show that the trial court clearly abused its discretion by failing to transfer the case and is not required to prove that it lacks an adequate appellate remedy. *In re David Lopez, Sr.*, 372 S.W.3d 174, 176-77 (Tex. 2012)(orig. proceeding); *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 117 (Tex. 2006)(orig. proceeding).

Contractual venue provisions are mandatory and enforceable. In general, forum-selection clauses should "be given full effect and should control absent a strong showing that [they] should be set aside." *In Re AutoNation, Inc.*, 228 S.W.3d 663, 667 (Tex. 2006). Strong public policy supports the enforcement of forum-selection clauses. Subjecting a party to trial in a forum other than that agreed upon and requiring an appeal to vindicate the rights granted in a forum-selection clause is:

> "[C]lear harassment" – harassment that injures not just the non-breaching party but the broader judicial system, injecting inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics contrary to the parties' contracted – for expectations.

Id., at 667-668 (citations omitted).

-8-

In cases involving a "major transaction" the parties are free to agree that venue will lie in a particular county. This case involves is a "major transaction" as defined by law. A "major transaction" is defined by statute as a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than one million. TEX. CIV. PRAC. & REM. CODE § 15.020(a).

Accordingly, the Contract constitutes a "major transaction" for purposes of section 15.020 because it expressly provides – in paragraph 4 – for the payment of "consideration with an aggregate stated value" of more than $ 1 million. Venue is therefore mandatory when there is a written agreement specifying venue, which involves one million dollars or more.

The Contract plainly and expressly provides for liquidated damages of $5,000,000 in the event of breach. Of course, the term "liquidated damages" refers to an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach.[12] A liquidated damages clause allows contracting parties to protect themselves against the difficulty, uncertainty, and

---

[12] See, *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005); *Valence v. Dorsett Operating Co.*,164 S.W.3d 656, 664, 48 (Tex. 2005).

expenses involved when trying to ascertain actual damages.[13]  "Given this desirable

goal, it is well established that parties may stipulate at the time of contracting to a

set damages amount for a breach of that contract, as long as the liquidated damages

provision is not a penalty." *Id.*

Notwithstanding the liquidated damages of $5,000,000 stated in the

Contract, Pentex asserted that its damages, in excess of $1,000,000, directly related

to the Contract.  Claims that are associated with a major transaction trigger the

mandatory venue if they "arise" from a major transaction.

> We concluded that the forum selection clause itself applied more
> broadly than to mere sales transactions because it applied to "any
> dispute arising out of" the agreement and the trial court erred in
> refusing to enforce the forum selection clause.

*Fisher*, 433 S.W.3d at 530, citing *In Re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 887

(Tex. 2010).  Here, the Contract broadly stipulates venue in Fannin County for "all

disputes" arising out of the contract, not merely for purposes of enforcement of the

liquidated damages provision.  Contract, ¶ 9.

Pentex established mandatory venue by prima facie proof.  A copy of the

Contract was attached to the Plaintiff's Original Petition; the existence of the

---

[13]     *Gator Apple, LLC v. Apple Texas Restaurants, Inc.*, No. 05-12-01369-CV, 2014 Tex. App. LEXIS 2539 (Tex. App. – Dallas, Mar. 5, 2014, pet. filed), citing to *Carrothers Const. Co, L.L.C. v. City of S. Hutchinson*, 288 Kan. 743, 207 P.3d 231 (Kan. 2009).

Contract was asserted; the specific agreement for venue to be exclusively in Fannin County, Texas was described; and the amount of damages sought were all specifically pleaded venue facts. Gibbs and Walton did not deny any of the pleaded venue facts. They are therefore taken as true.[14] That is all Pentex needed to do to establish mandatory venue. "A party must establish mandatory venue by prima facie proof. TEX. R. CIV. P. 87(3). . . . *Spin Doctor Golf, Inc v. Paymentech, L.P.*, 296 S.W.3d 354, 357, 359 (Tex. App. – Dallas 2009, pet. denied). In *Spin Doctor Golf* the Court of Appeals found:

> The agreement attached to the motion to transfer venue lists annual sales of over $1,000,000. Thus, on its face, it constitutes prima facie evidence of a major transaction within the meaning of 15.020(a).

*Id.* So too here, the undisputed venue facts establish – on the face of the Contract – that this was a major transaction.

Frankly, Gibbs and Walton never challenged the fundamental venue facts. They simply asserted that Fannin County was inconvenient, despite their written promises. Gibbs and Walton only requested that venue be changed pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002, a permissive venue provision. It is clear

---

[14] TEX. R. CIV. P. 87(3)(a)("properly pleaded" venue facts taken as true unless specifically denied by adverse party.)*; see e.g.*, *Maranatha Temple, Inc. v. Enter. Products Co., et. al.*, 833 S.W.2d 736 (Tex. App. – Houston [1st Dist.] 1992, writ denied).

-11-

that mandatory venue provisions trump permissive ones,[15]

The parties agreed to venue in Fannin County, Texas. It was mandatory. It was error to transfer the case to Tarrant County, Texas, an error later recognized and corrected too late by Judge Blake.

## **PRAYER**

Pentex submits that the initial ruling relating to venue was incorrect and should be the proper subject of mandamus.

Respectfully submitted,

/s/ Scott Smith
By:_____
Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
e-mail smithlaw@airmail.net
Facsimile (903) 870-1446
Telephone (903) 868-8686

---

[15] *Airvantage, L.L.C. v. TBAN Properties # 1, L.T.D.,* 269 S.W.3d 254, 257 (Tex. App.-Dallas 2008, no pet.) (citing *Wichita County v. Hart*, 917 S.W.2d 779, 781 (Tex.1996). Further, section 15.020(c) provides in pertinent part that, when applicable, section 15.020 controls over other venue statutes in title 2 of the Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM. CODE § 15.020(c). In *In Re Railroad Repair*, No. 05-09-0135-CV, 2009 Tex. App. LEXIS 8404 (Tex. App. – Dallas, Nov. 9, 2009, no pet.), the Court specifically found that venue under section 15.002, a permissive venue statute, must yield to the mandatory venue provision in section 15.020.

**Unsworn Delcaration Pursuant to**
**TEX. CIV. PRAC. & REM. CODE § 132.001**

"My name is Thomas Scott Smith, my date of birth is December 18, 1957, and my address is 120 South Crockett Street, Sherman, Texas 75090, and I declare under penalty of perjury that, I am fully competent to testify as to the matters stated herein. I have personal knowledge of each of the facts stated in this petition are all true and correct.

Executed in Grayson County, Texas on this February 27, 2015.

/s/ Thomas Scott Smith

_____

Thomas Scott Smith, Declarant

## CERTIFICATE OF COMPLIANCE WITH APPELATE RULE 52.3(j)

This certifies that the undersigned has reviewed this Petition and concluded that every factual statement in it is supported by competent evidence in the appendix submitted herewith, or the record, as required by Appellate Rule 52.3(j).

/s/ Scott Smith

Scott Smith

## CERTIFICATE OF COMPLIANCE WITH APPELATE RULE 9.4(j)

I certify that this document contains 7,935 words, as indicated by word-count function of the computer program used to prepare it, and excludes the caption, statement regarding oral argument, table of contents, table of authorities, statement of the case, statement of issue presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, as required by Appellate Rule 9.4(j).

/s/ Scott Smith

Scott Smith

-13-

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was served, by electronic transmission and facsimile (800) 437-7901 to Christy L. Lee, Esq., of Law Offices of Christy Lee, P.C., 777 Main Street, Suite 600, Fort Worth, Texas 76102, and to Howard Kirk Gibbs, Pro Se, at 4360 Western Center Blvd., Suite 205, Ft. Worth, Texas 76137, on this February 27, 2015.

 

_____

Scott Smith

## APPENDIX

A      Contract

B.     Record, pages 1-758

C.     Record, pages 759-858



Instrument Number: 2005-61443

As

Recorded On: May 24, 2005          Misc General Fee Doc

Parties: GIBBS KENNETH VERN                                    Billable Pages: 9
To                                                             Number of Pages: 9

Comment:

\*\* Examined and Charged as Follows: \*\*

Misc General Fee Doc          30.00
Total Recording          30.00

\*\*\*\*\*\*\*\*\*\* **THIS PAGE IS PART OF THE INSTRUMENT** \*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law

File Information:                          Record and Return To:
   Document Number   2005-61443
   Receipt Number   196064                 AL BARCROFT
   Recorded Date/Time  May 24, 2005 11 44A  P O BOX 168
                                           TRENTON TX 75490
   User / Station  J Morris - Cash Station 1



THE STATE OF TEXAS )
COUNTY OF DENTON )
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Denton County, Texas

Cynthia Mitchell
County Clerk
Denton County, Texas



Ex. A, p 1 of 9



## Contract for Sale of Land, Mineral Rights and Royalties, and all other Assets or Monies Received from the Estate of Bert Hughes Gibbs, Kathryn G. Gibbs, and/or the Mary L. Houseworth Trust(s) or "The Kathryn Houseworth Gibbs Irrevocable Trust"

This agreement between Albert Lynn Barcroft, hereinafter "Barcroft", and Kenneth Vern Gibbs, Candace Gibbs Walton, and Howard Kirk Gibbs, hereinafter collectively also "Gibbs", is a contract for sale of thirty percent 30% of all land, mineral rights, royalties, and any other monies or assets which Gibbs, or any of the three individuals referred to collectively as "Gibbs" in this agreement, receives, or is due, from this date forward, either collectively or individually, as a result of any inheritance or estate proceeds, or any other property assets received from any trust(s) or transfers from Bert Hughes Gibbs, Mary L. Houseworth, and/or Kathryn G. Gibbs at any time, past, present, or future; including, but not limited to, the following:

a) All proceeds from the Estate of Bert Hughes Gibbs, and/or;

b) All property and/or assets of any kind which are received as a result of any past or future transference from Bert Hughes Gibbs, Kathryn G. Gibbs, or any trust to which Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement, are beneficiary; and/or,

c) All inheritance of any kind and in any form by Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement; and/or;

d) All proceeds from any lawsuit which currently exists, or may arise, because of, or in connection with, the relationship(s) with Bert Hughes Gibbs, Kathryn G. Gibbs, Kip Hughes Gibbs, Sandra Faye Gibbs, "The Mary L. Houseworth Irrevocable Trust", "The Kathryn Houseworth Gibbs Irrevocable Trust", and any other trust(s) to which Gibbs are beneficiary(ies) or trustee(s) in any form; and/or,

e) All property and/or assets which may have been previously passed to them by Bert Hughes Gibbs, Kathryn G. Gibbs, "The Mary L. Houseworth Irrevocable Trust", and/or "The Kathryn Houseworth Gibbs Irrevocable Trust"; and/or,

f) All other property and/or assets passed to Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement, from any source involving Bert Hughes Gibbs, Kathryn G. Gibbs, "The Kathryn Houseworth Gibbs Irrevocable

Contract for Sale of Land, Mineral Rights,                    1                    Initials of
Royalties and Other Assets and/or Monies                                          all parties

18

Ex. A, p. 2 of 9



Trust", and/or "The Kathryn Houseworth Gibbs Irrevocable Trust"; or, any other trust(s) or business organization(s) of any kind, which might be uncovered or discovered in the future; and/or,

g) All property and/or other assets in any trust or former trust; and, any property or other assets in any corporation, limited liability company, partnership(s), sole proprietorship(s), or any other business organization of any kind in which one or more of the Gibbs are owners, trustee(s) or beneficiary(ies).

h.) Specifically exempted from this agreement are any properties and/or other assets which are currently under the full control of Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement; provided, however; that if any legal work is required to aid in the collection of said assets, or the sale or control of said property, then said property or other assets shall be subject to the terms, conditions, and considerations set forth within this agreement as part of the property and/or assets listed above, and shall have no exemption to the terms and considerations of this agreement. Also exempted from this agreement are any personal items that were passed to Gibbs from their father, which were not included in the divorce distribution between their mother and father.

**This sale of 30% of all land, property and other assets described herein above shall be governed by the following terms, conditions, and considerations:**

1  Gibbs, or any of the individuals referred to collectively as "Gibbs" in this agreement, shall give their/his/her full cooperation to all efforts by Barcroft to collect any of the funds referred to in this agreement. Said cooperation shall include, but not be limited to, providing necessary information and documentation, being available to give testimony, and giving full support to the overall effort of collecting funds and assets from the sources stated herein.

2. Any party hereto shall have the right to order a complete inventory of all property and other assets described herein at any time, and all parties agree to provide full cooperation to such an effort.  Any costs shall be born by the party requesting the inventory.

Contract for Sale of Land, Mineral Rights,
Royalties and Other Assets and/or Monies

2

Initials of
all parties *AB KHG CAW* 



Ex. A, p. 3 of 9

3. As full consideration, Barcroft agrees to provide, or has provided, the following:

a) Barcroft has paid to Gibbs a total of twenty-one (21) silver dollars minted by the United States Mint, photocopy of said coins attached hereto as **Exhibit "A"**, and incorporated herein for all purposes as real consideration under this agreement, and Gibbs hereby acknowledges receipt of same with this signing; and,

b) Barcroft will provide his services, knowledge and best efforts in the pursuit of all available funds, property, and/or other assets from the sources stated herein; and,

c) Barcroft, at his expense, will provide legal counsel by acquiring a licensed attorney for any reasonable and prudent actions necessary to the collecting of the funds from the sources stated herein; however, should Gibbs, or any of the individual Gibbs, feel that their/his/her interests are not properly served by the attorney Barcroft provides, that party will be responsible for the legal fees of any other attorney(s) hired by Gibbs, or any individual Gibbs, to protect their/his/her individual interests. In that event, it is agreed by all parties hereto that the attorney hired by Barcroft will represent only Barcroft in all future action(s). Furthermore, it is specifically agreed that said attorney hired by Barcroft will represent only Barcroft should a dispute arise between the parties hereto; and, Gibbs, individually and collectively, agree not to claim conflict of interest should said attorney represent Barcroft in a conflict between the parties hereto; and, Gibbs, collectively and individually, hereby waive their/his/her right to claim conflict of interest with regards to said attorney in such instance.

4. It is understood and agreed that Gibbs may cancel or nullify this contract only under the following conditions:

a) If Gibbs pays over to Barcroft the sum of five million dollars ($5,000,000.00 US) in full, in addition to any money received prior to said one time payment, as liquidated damages and full settlement of all consideration on Gibbs part.

b.) If Barcroft voluntarily abandons the effort to collect the funds from the sources stated herein; however, in this event, Barcroft shall retain all amounts already received, and will continue to receive any future proceeds from any of the property or other assets, and will retain his ownership interest in any property

Contract for Sale of Land, Mineral Rights,
Royalties and Other Assets and/or Monies                3        Initials of all parties _____ _____ _____

20

Ex. A, p. 4 of 9

which is covered by this agreement and has been brought into the control of Gibbs, or is paying benefits of any kind at the time of Barcroft's abandonment; or, which is brought into the control of Gibbs, or start paying benefits at a later date, provided that said control or payments is a result of actions prior to Barcroft's abandonment.

5. If Barcroft dies or becomes incapacitated, the contract will remain in force, and the assets which have been accessed and are paying at the time of Barcroft's death, or which are later accessed as a result of Barcroft's efforts, will go to his heirs and assigns.

6. It is hereby agreed that there shall be a business organization, the exact type to be agreed upon at a later date, created by the parties hereto; and, that all revenue of any kind received from any of the property and/or assets covered herein shall be deposited into a bank account in that entity's name, and that all expenses necessary to the continuation of revenue being paid to the parties hereto (i.e. property taxes on the royalties or property covered herein, and any necessary expenses such as well upkeep, etc.) shall be deducted and paid as required before the 70/30 division agreed to in this contract. Barcroft shall have a 50% vote in the operation of said business organization; and, the only function of said business organization shall be to facilitate the agreement in this contract. Any monies paid out of said business organization, other than the agreed upon split between the parties, shall be agreed upon by all parties hereto. The division shall be divided on a basis of 30% to Barcroft, 23.34% to Kenneth Vern Gibbs, 23.33% to Candace Walton Gibbs, and 23.33% to Howard Kirk Gibbs, at each instance of dispersal to the parties. Any party may demand a split of the assets of said business organization at any time.

7. If either party should break the terms of this agreement in any fashion, or attempt to render the contract invalid, in any way which would require legal action to correct or enforce, the party found at fault, or the party failing to prevail, shall pay all legal expenses of any type for himself/herself, and for the prevailing party.

8. This contract is written to comply with the laws of the State of Texas; and, any provision found by a court of competent jurisdiction to be in non-compliance shall be

Contract for Sale of Land, Mineral Rights,  4   Initials of
Royalties and Other Assets and/or Monies     all parties

Ex. A, p. 5 of 9

automatically amended to comply with said laws in such a manner as to keep the original intent of the provision as closely in place as possible. In no event shall any such findings on one provision affect any other provision within the contract.

9. Notwithstanding any other provision under the law, it is expressly agreed that this contract shall be performable only in Fannin County, Texas; and, any dispute(s) will be resolved in the courts of Fannin County, Texas. The signing hereto of this contract by all parties completes the sale of 30% of all property and assets of Gibbs to Barcroft.

10. This agreement shall be binding on all heirs and assigns of the parties hereto.

11. No lien(s) may be placed upon any of the property covered herein unless such lien(s) is/are agreed to by all parties hereto, reduced to writing, and signed by all parties hereto before a notary public.

12. All agreements between the parties hereto are contained in writing in this contract, and no verbal agreements shall be deemed valid unless contained in writing herein. All amendments hereto must be in writing, and signed by all parties before a notary public.

13. Albert Lynn Barcroft, Kenneth Vern Gibbs, Candace Gibbs Walton, and Howard Kirk Gibbs, the principal parties hereto, hereby agree to this contract in its entirety without reservation; and, each pledge never to challenge the terms, conditions, intentions, and/or considerations under this contract with their respective signing hereunder.

WITNESS OUR HANDS this 10th day of May, 2005.

_____  
Albert Lynn Barcroft

_____  
Kenneth Vern Gibbs

_____  
Candace Gibbs Walton

_____  
Howard Kirk Gibbs

Initials of
all parties. RLB KVG CGW H



Ex. A, p. 6 of 9

## ACKNOWLEDGEMENT

**STATE OF TEXAS**

Subscribed, Sworn, and Sealed

**COUNTY OF COLLIN**

On this 10th day of May in the year 2005, **Albert Lynn Barcroft**, known to me, did personally appear before me; and, after taking the oath, deposes and says that he is the man who executed the foregoing instrument; and, further stated that he executed the same as his free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that he agrees to abide by all said provisions.

_____
Albert Lynn Barcroft

Subscribed and sworn to before me this 10th day of May in the year 2005.

RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

_____
Notary in and for the State of Texas

**STATE OF TEXAS**

Subscribed, Sworn, and Sealed

**COUNTY OF COLLIN**

On this 10th day of May in the year 2005, **Kenneth Vern Gibbs**, known to me, did personally appear before me; and, after taking the oath, deposes and says that he is the man who executed the foregoing instrument; and, further stated that he executed the same as his free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that he agrees to abide by all said provisions.

_____
Kenneth Vern Gibbs

Subscribed and sworn to before me this 10th day of May in the year 2005.

RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

_____
Notary in and for the State of Texas

Contract for Sale of Land; Mineral Rights,
Royalties and Other Assets and/or Monies

6

Initials of
all parties:

Ex. A, p. 7 of 9

**STATE OF TEXAS**

**COUNTY OF COLLIN**

**Subscribed, Sworn, and Sealed**

On this 10th day of May in the year 2005, **Candace Gibbs Walton**, known to me, did personally appear before me; and, after taking the oath, deposes and says that she is the woman who executed the foregoing instrument; and, further stated that she executed the same as her free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that she agrees to abide by all said provisions.


Candace Gibbs Walton

Subscribed and sworn to before me this 10th day of May in the year 2005.

RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

Notary in and for the State of Texas

**STATE OF TEXAS**

**COUNTY OF COLLIN**

**Subscribed, Sworn, and Sealed**

On this 10th day of May in the year 2005, **Howard Kirk Gibbs**, known to me, did personally appear before me; and, after taking the oath, deposes and says that he is the man who executed the foregoing instrument; and, further stated that he executed the same as his free and informed act and deed for the purposes stated therein, and with a full understanding of the scope of the provisions contained therein; and, that he agrees to abide by all said provisions.


Howard Kirk Gibbs

Subscribed and sworn to before me this 10th day of May in the year 2005

RUBI R. JIMENEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-08

Notary in and for the State of Texas

Contract for Sale of Land, Mineral Rights,
Royalties and Other Assets and/or Monies

7.

Initials of
all parties  KUG  CGW  M

Ex. A., p. 8 of 9





Al-Barcraft
% P.U. Box 188
Trenton, Texas
75490 (u.d)

Exhibit "A"

Ex. A, p-9079

